UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED

SEP 29 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-580-GWU

FLORINDA L. BATES,            PLAINTIFF,

VS.            **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Bates

  Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

  Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Bates

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Bates

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Bates

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

*Additional information concerning the specific steps in the test is in order.*

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Bates

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Florinda L. Bates, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a mood disorder, and a personality disorder, and being "status post lumbar fusion, decompression and diskectomy surgeries." (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 24-8). The Appeals Council declined to review, and this action followed.

After an administrative hearing, the ALJ submitted interrogatories to the VE asking whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 290). She: (1) could stand three hours in an eight-hour day (no more than one hour without interruption); (2) could walk three hours in

an eight-hour day (no more than one hour without interruption); (3) could occasionally bend, squat, climb, and crawl; and (4) was limited to simple, routine, non-detailed tasks where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workplace were infrequent and gradually introduced. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning April 12, 2002 due to various back problems, including a herniated disc, spondylolisthesis, and degenerative disc disease. (Tr. 85). The medical evidence indicates that she injured her back lifting a concrete birdbath in April, 2002 (e.g., Tr. 167), and the plaintiff's treating neurosurgeon, Dr. Magdy El-Kalliny, obtained an MRI showing degenerative changes and a large disc protrusion at the T11-12 level, as well as spondylolisthesis associated with degenerative disc disease and neural foraminal narrowing at L4-5 (Tr. 195). He performed a diskectomy at T11-12 in October, 2002 (Tr. 190) and a fusion at L4-5 in September, 2003 (Tr. 183). The second operation was followed by exploratory surgery after complaints of continued left leg pain, and it was found that the L4 nerve root was being compressed by cartilaginous tissue. (Tr. 306).

8

Bates

Decompression was performed, and, following this surgery, the plaintiff reported that she no longer had pain in her left leg. (Tr. 305). In the meantime, an additional herniation had been found at L1-2, but the physician indicated that he did not believe his patient was significantly symptomatic at this level, and he planned to wean her off narcotic pain medications. (Tr. 185, 231-2, 305). At the last recorded visit to this source, on December 4, 2003, the plaintiff reported that she was doing well, apart from some left hip pain which was resolving, and that her main problem now was "spasms" in the right arm. (Tr. 301). Dr. El-Kalliny wrote that she "does not have a real pain," and prescribed medication. (Id.). No functional restrictions are given.

The only functional restrictions were given by Dr. Rami Kahwash after a consultative orthopedic examination on March 28, 2004. Dr. Kahwash reviewed extensive medical records (Tr. 352) and noted that the plaintiff had a limited range of motion, positive straight leg raising on the left, detectable paraspinal muscle spasm in the lumbar area, and some difficulty with toe and heel walking. (Tr. 347). However, her reflexes were symmetrical. (Id.). He completed a residual functional capacity assessment consistent with the hypothetical factors provided by the ALJ to the VE. (Tr. 351). No treating or examining source apart from Dr. Kahwash suggested functional restrictions, or indicated that the plaintiff could not work.

The plaintiff argues on appeal that, nevertheless, the hypothetical factors were insufficient because they did not incorporate her feelings of constant pain.

9

Bates

While a plaintiff does not have to show objective evidence of pain itself, there must be evidence of an underlying medical condition and (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be a severity which can reasonably be expected to give rise to the alleged pain. Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986). In the present case, there is evidence of an underlying medical condition, but the statements of Dr. El-Kalliny, the plaintiff's treating neurosurgeon, indicate that she responded well to surgery, and that he planned to wean her off strong pain medications. Therefore, there is substantial evidence to support the ALJ's determination that the plaintiff's subjective complaints of pain were not entitled to complete credibility.[1]

Regarding the plaintiff's mental status, she had also described depression, dislike of the public, and grouchiness at the administrative hearing, and indicated that she had been going twice a month to a mental health clinic until her medical card had been cut off. (Tr. 46-7). Records from the Adanta group show that the plaintiff had been treated starting in August, 2002 for complaints of depression, stress, and back pain. (Tr. 128). However, she rated her pain as "5" on a scale of

---

[1] A review of the ALJ's decision, moreover, indicates that he carefully considered her subjective complaints of pain, and even erroneously indicated that Dr. El-Kalliny had said that her right arm had "real pain," (Tr. 20) when in fact he had said the opposite (Tr. 301).

10

1 to 10. (Id.). One of her problems was overeating, and she was diagnosed with an eating disorder, an adjustment disorder, "rule out" major depression, "rule out" a psychotic disorder, "rule out" personality disorder, "rule out" a schizotypal disorder, and "rule out" borderline personality disorder. (Tr. 129). Her Global Assessment of Functioning (GAF) score was given as 50 to 55, indicating serious to moderate symptoms per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34.

Julie Joseph Fox conducted a psychological evaluation in February, 2003, at which time the plaintiff described a long history of emotional problems which included sexual abuse, an eating disorder, outbursts of anger, and suicidal gestures. (Tr. 167-72). The psychologist noted that the plaintiff appeared to want to shock the examiner, and was "fairly focused" on her complaints and blaming others for her difficulties. (Tr. 172). Her diagnostic impression was "reported victim of sexual abuse," and a borderline personality disorder, with a GAF of 55. (Tr. 175). The plaintiff appeared to be able to understand, remember, and follow instructions, focus on specific tasks, and able to enjoy herself and shut out distractions while working. (Id.). However, she appeared to be poorly motivated to work, and was thought likely to continue to have interpersonal difficulties on the job. (Id.).

A state agency psychologist reviewed the record at this point and concluded that the plaintiff would be moderately limited in certain areas (Tr. 259-60), but also

Bates

that she could work "in an environment where she had minimal public contact doing routine chores" (Tr. 277). The hypothetical question did include restrictions on public contact and indicated that the plaintiff would be limited to simple, routine, and non-detailed tasks. (Tr. 290). In view of the fact that the plaintiff has not raised the issue of the specific moderate limitations also identified by the reviewer, the factors in the hypothetical question can be said to be reasonably well supported by substantial evidence.

The decision will be affirmed.

This the 29 day of September, 2005.

G. WIX UNTHANK
SENIOR JUDGE

12